UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-20244-CIV-O'SULLIVAN

[CONSENT]

GEORGE FARLEY,

    Plaintiff,

v.

OCEANIA CRUISES, INC.,

    Defendant.
_____/

## ORDER

THIS MATTER is before the Court on the Defendant Oceania Cruises, Inc.'s Motion to Strike Randall W. Jaques as an Expert Witness (DE# 45, 1/20/15). On March 11, 2015, the plaintiff filed his response to the instant motion. See Plaintiff's Response to Defendant Oceania Cruises, Inc.'s Motion to Strike Randall W. Jaques as an Expert Witness [DE 45] (DE# 57, 3/11/15).

## BACKGROUND

In the instant case, the defendant "owned, operated, managed, maintained and/or controlled the cruise ship vessel "Marina." See Complaint (DE# 1 at ¶6, 1/24/13). On or about February 6, 2012, while on board the Marina, the plaintiff "tripped over the leg of a lounge chair which was extended into the aisle causing [the plaintiff] to fall [and sustain] serious personal injuries." Id. at ¶¶6, 9. The accident occurred on deck 14 of the vessel. Id. at ¶11. The complaint alleges that: "[t]he leg of the lounge chair extending into the pedestrian walkway constituted a dangerous and hazardous

condition of which [the] defendant had actual or constructive knowledge. Alternatively, the [d]efendant created this dangerous and hazardous condition by its actions at the area where the accident occurred." Id. at ¶10. The compliant further alleges that the defendant "negligently failed to determine the existence of [this] hazard, failed to eliminate the hazard, failed to modify the hazard and failed to warn passengers of the hazard." Id. at ¶12.

"A negligence claim requires proof that '(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm.'" Sorrels v. NCL (Bahamas) Ltd., No. 13-cv-21413, 2013 WL 6271522, at *2 (S.D. Fla. Dec. 4, 2013) (quoting Chapparo v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012)). Under maritime law, "a shipowner owes to all persons properly aboard the ship 'the duty of exercising reasonable care under the circumstances of each case.'" Id. (quoting Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 628 (1959)). "When a passenger claims that [he or] she was injured by a dangerous condition on the ship, this standard of care normally 'requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition.'" Id. (quoting Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989)). In cases where the plaintiff alleges that the defendant itself created the dangerous condition, he or she "must prove that [that the defendant] 'created the allegedly dangerous condition sufficient to constitute a breach of its duty of reasonable care.'" Id. (quoting Long v. Celebrity Cruises, Inc., 982 F. Supp. 2d 1313, 1317 (S.D. Fla. 2013)).

2

In the instant case, the plaintiff listed Randall W. Jaques as his liability/safety expert. See Plaintiff's Notice of Filing Expert Witness Disclosure (DE# 41, 10/14/14).[1] The plaintiff retained Mr. Jaques "for the deliberately narrow purpose of testifying regarding safety issues and the applicable standards of care and policies and procedures in the cruise ship industry for maintaining clear passageways for the safety of passengers and crew members and to opine regarding the cause of [the p]laintiff's fall" and "is offering Randall Jaques' testimony for the narrow purpose of reviewing the standard of care in the cruise industry regarding the safety of passengers and crew members walking in the aisles of a cruise ship deck such as deck 14 on defendant[']s cruise ship and as to the cause of [the p]laintiff's fall." Plaintiff's Response to Defendant Oceania Cruises, Inc.'s Motion to Strike Randall W. Jaques as an Expert Witness [DE 45] (DE# 57 at 3, 3/11/15).

## THE EXPERT REPORT

On October 14, 2014, the plaintiff filed Mr. Jaques' curriculum vitae and expert report. See Plaintiff's Notice of Filing Expert Witness Disclosure (DE# 41 at 17-31, 10/14/14). In his expert report, Mr. Jaques states that he reviewed multiple documents including the complaint, the medical statement form, the defendant's response and amended response to the plaintiff's request for production, the log book for the date of the accident and the plaintiff's deposition. See Report (DE# 41 at 24, 10/14/14). Mr. Jaques did not inspect the vessel where the accident took place.

---

[1] In his response, the plaintiff refers to Mr. Jaques as a "maritime safety expert." Plaintiff's Response to Defendant Oceania Cruises, Inc.'s Motion to Strike Randall W. Jaques as an Expert Witness [DE 45] (DE# 57 at 2, 3/11/15).

3

In the "Opinions" section of his expert report, Mr. Jaques states the following:

**Expert Opinion 1: Oceania Cruises was careless and negligent by not maintaining a clear deck walking space, hazard free on deck 14, known as the sun deck. Not informing the passenger who blocked the isle [sic] with a lounge chair creating a dangerous and hazardous condition to move it** [sic]. [A photograph of the area] clearly indicates there was a lounge chair turned with the feet facing the inside. **The deck attendants were careless in not informing this passenger while a chair is permissible, you cannot obstruct the walking path of the open deck, and by not maintaining a clear pathway.**

**Expert Opinion 2: Oceania crewmembers were car[e]less by not informing the passenger in the lounge chair not to obstruct the walkway for safety.** If they had done so, along with telling the passenger to use caution and move the chair back towards the hull of the ship, this accident would most likely not have happened, or by moving the chair out of the aisle. There is only 3 feet of space for a passenger to walk in between the deck chairs and the railing on sun deck.[2] In the case of an emergency these areas must be kept open and clear for passenger and crew to walk without obstruction. **By allowing this hazardous condition to exist and failing to recognize or correct it** [sic].

**Expert Opinion 3: Oceania Cruises is at fault for failing to properly train deck attendants, security personnel and deck department personnel in deck cleaning and hazard observation responsibility.** If there had been supervisors present on the open deck, this type of safety hazard would have been addressed and corrected. [The plaintiff] was walking towards the gym. He was walking on what he thought was an open and unobstructed walkway. **He did not act careless or negligent. Any inference that he was not paying attention is insulting. This is a safety hazard that is known throughout the cruise industry. The cruise lines are on notice of previous accident involving passengers tripping and falling on the legs of lounge chairs.** RCCL SQM or CCL[3] SMS manual 1.11 requires the executive committee meet once a voyage.

---

[2] Mr. Jaques does not provide a source for his statement: "There is only 3 feet of space for a passenger to walk in between the deck chairs and the railing on sun deck." Expert Report (DE# 41 at 27, 10/14/14). The Court notes that Mr. Jaques did not inspect the subject vessel and therefore did not take any measurements in this case.

[3] The Court assumes that "RCCL" refers to "Royal Caribbean Cruise Lines" and that "CCL" refers to "Carnival Cruise Lines."

> This policy also requires the safety committee meet once a month. At these meetings the lounge chair safety issue is addressed.

Expert Report (DE# 41 at 27-28, 10/14/14) (emphasis added; footnotes added). The "Conclusion" section of Mr. Jaques' report contains additional/overlapping opinions:

> There are no written documents that explain who is in charge of keeping lounge chairs out of the way of deck traffic, or how crewmembers are trained in such a daily event. **If there had been adequate supervision, diligently observing what was occurring on deck 14, crewmembers could have been properly advised on what to do. This failure by Oceania's deck department to provide diligent and trained crew to observe safety hazards was a failure.**
>
> \*\*\*
>
> **It is my opinion the crewmembers, supervisors, and senior officers of the M/V Marina were in fact aware of this condition[4]** and subsequently allowed for passengers to obstruct the walkway thereby creating an open and identifiable hazard.
>
> \*\*\*
>
> I will instruct the jury in the responsibilities of both the Master and the Staff Captain. They will then have a better understanding of how this intricate system works at sea and if governed properly, accidents are avoided and safety issues are dealt with immediately.
>
> \*\*\*
>
> **Oceania was well aware of the age category of its passengers on board the M/V Marina.**[5] The cruise line industry takes extra steps to assist elderly passengers on ships, unfortunately this did not happen on

---

[4] The Court notes that Mr. Jaques did not interview any of the defendant's employees and cites no sources to support his "opinion" concerning what the "crewmembers, supervisors, and senior officers of the M/V Marina" knew. Expert Report (DE# 41 at 29, 10/14/14).

[5] Again, Mr. Jaques does not cite any source to support the statement that the defendant "was well aware of the age category of its passengers on board the M/V Marina" or that the industry as a whole "takes extra steps to assist elderly passengers on ships." Id.

board the M/V Marina.

Id. at 28-29 (emphasis added; footnotes added).

## STANDARD OF REVIEW

"Federal Rule of Evidence 702, as explained by the Supreme Court in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 . . . (1993), and its progeny, controls determinations regarding the admissibility of expert testimony." City of Tuscaloosa v. Harcros Chems., Inc., 158 F.3d 548, 562 (11th Cir. 1998) (footnote and citation omitted). Under Daubert and Rule 702, the Court serves as a gatekeeper to the admission of scientific evidence. Quiet Tech. DC-8 v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003) (citing Daubert, 509 U.S. 579, 589 (1993) and McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)); Gen. Elec. Co. v. Joiner, 522 U.S. 136, 142 (1997) (noting that district courts have broad discretion in deciding to admit or exclude expert testimony). However, "[t]he Court's gatekeeper role is not intended to supplant the adversary system or the jury's role because, as Daubert explained, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" Latele Television, C.A. v. Telemundo Commc'ns Grp., LLC, No. 12-cv-22539, 2014 WL 7150626, at *7 (S.D. Fla. Dec. 15, 2014) (quoting Daubert, 509 U.S. at 596).

In ruling on the admissibility of expert testimony under Rule 702, the Court must determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry

6

> mandated by Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand evidence or to determine a fact in issue.

Quiet Tech., 326 F.3d at 1340-41 (citing City of Tuscaloosa, 158 F.3d at 562 (other citation omitted)). "While there is inevitably some overlap among the basic requirements – qualification, reliability, and helpfulness – they remain distinct concepts and the courts must take care not to conflate them." United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (citing Quiet Tech., 326 F.3d at 1341).

"The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion, whether the proponent is the plaintiff or defendant in a civil suit, or the government or the accused in a criminal case." Frazier, 387 F.3d at 1260.

## ANALYSIS

With these standards in mind, the Court will address the instant motion. The defendant seeks to disqualify Mr. Jaques on the grounds that his "opinions are speculative, subjective, and are based on unreliable, untestable, and unscientific methods." Defendant Oceania Cruises, Inc.'s Motion to Strike Randall W. Jaques as an Expert Witness (DE# 45 at 2, 1/20/15). According to the defendant, Mr. Jaques' is not qualified to render opinions in this case, his methodologies are not reliable and his testimony will not assist the trier of fact. Id. at 4. The plaintiff maintains that "[n]ot only do Randall Jaques' opinions meet the applicable standard of admissibility under Rule 702, but even the most stringent interpretation of the Daubert requirements leads to the same conclusion." Plaintiff's Response to Defendant Oceania Cruises, Inc.'s Motion to Strike Randall W. Jaques as an Expert Witness [DE 45] (DE# 57 at 3-4, 3/11/15).

**A. Qualification**

The first requirement for the admissibility of expert testimony is that the expert is qualified to testify competently regarding the matters he or she intends to address at trial. City of Tuscaloosa, 158 F.3d at 563. Rule 702 permits a person to qualify as an expert based upon knowledge, skill, experience, training, or education. Frazier, 387 F.3d at 1260-61. "Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" Clena Inv., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 660 (S.D. Fla. 2012) (quoting Jack v. Glaxo Wellcome, Inc., 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002)).

In his expert report, Mr. Jaques summarizes his qualifications as follows:

I, Randall W. Jaques, have been educated and trained in the areas of maritime accidents and injuries as security and safety officer "SSO Ships security officer level IV Netherlands". . . . I have extensive experience investigating and analyzing accidents and injuries that occur while at sea and in port, including tender accidents, slip and falls, sexual assaults, and alcohol/drug related cases over a period of 25 years while employed as a Security Manager, Homicide Investigator, and Expert Witness in maritime accidents. As a ship's security officer, I have extensive experience with the analysis of shipboard policies and procedures. One of the primary duties of a ship's security officer is to analyze existing policies and procedures, as it applies to safety aboard ships, and to contribute to the improvement of those policies and procedures. To this end, I have studied and am familiar with the positions and duties of a cruise ship's crew and the standards of how those duties should be carried out as it relates to shipboard safety and emergencies. I am also experienced in conducting, overseeing, and confirming the training of crewmembers as it relates to emergency, security, and safety issues. As a shipboard security officer and investigator, I have extensive experience in analyzing whether adequate policies and procedures were in place and were properly followed in instances of emergencies and safety issues, including the identification and elimination of hazardous conditions on a vessel. It is based upon this collective experience with shipboard duties, policies and procedures, aboard large cruise passenger ships, that I offer my opinions

8

in this matter.

Expert Report (DE# 41 at 23-24, 10/14/14).

The defendant argues that Mr. Jaques is unqualified to testify as an expert because Mr. "Jaques has not and cannot establish that his experience qualifies him to render the opinions that he purports to hold in this case." Defendant Oceania Cruises, Inc.'s Motion to Strike Randall W. Jaques as an Expert Witness (DE# 45 at 11, 1/20/15).

In his response, the plaintiff notes that:

> Aside from having the educational and technical experience to support his expertise, Mr. Jacques [sic] is also a member of the National Academy of Forensic Engineers, Society of Accident Reconstructionists, Maritime Law Association of the United States; ASIS International and the Navy League. Mr. Jaques has investigated over 1,500 ship board accidents, half of which were related to trip and falls and slip and falls. Mr. Jaques was also the Chief Security Officer on Holland America Cruise Ship Lines, Island Star Cruise Ship Lines and Disney Cruise Lines.

Plaintiff's Response to Defendant Oceania Cruises, Inc.'s Motion to Strike Randall W. Jaques as an Expert Witness [DE 45] (DE# 57 at 10, 3/11/15).[6]

The qualification "inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." Clena Inv., Inc., 280 F.R.D. at 660 (citing Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co., 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (citations and internal quotation marks omitted; alteration in original)). In the instant case, the undersigned will assume, without deciding, that Mr. Jaques' education, background and

---

[6] Although this point appears to have been raised in response to the plaintiff's reliability challenge, it also applies to qualification.

9

experience qualify him as a liability/safety expert in the instant case.

## B.   Reliability

The second admissibility requirement is reliability. Daubert, 509 U.S. at 589. Reliability is different than believability or persuasiveness, which remains an issue for the trier of fact. Rink v. Cheminova, Inc., 400 F.3d 1286, 1293 n. 7 (11th Cir. 2005). To evaluate the reliability of an expert opinion, courts consider, to the extent practicable: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique and (4) whether the technique is generally accepted in the scientific community. These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion. Frazier, 387 F.3d at 1261-62.

The defendant argues that Mr. Jaques' methodology is unreliable because "all he did was review secondary written materials to reach his conclusions." Defendant Oceania Cruises, Inc.'s Motion to Strike Randall W. Jaques as an Expert Witness (DE# 45 at 5, 1/20/15). The defendant notes that Mr. "Jaques has not formulated any of his conclusions on objective, verifiable evidence because he did not board the ship, did not test the area, did not take measurements, did not take his own photographs, and did not interview any witnesses." Id.

In his response, the plaintiff states that:

> An expert might draw a conclusion from a set of observations based on extensive and specialized experience. Kumho Tire Company, Ltd. v. Carmichael, 526 US. 137, 141 (1999). This is exactly the type of experience that Mr. Jaques draws upon in rendering his opinions in this case. Mr. Jaques is a highly qualified maritime safety and security expert

10

> with over 25 years experience in dealing with maritime accidents and investigations. The methodology used by Mr. Jaques is no different than that found sufficient for non-scientific experience based experts in other post Kumho cases. He reviewed all of the record evidence, and then applied his knowledge from his experience in the cruise ship industry, knowledge of industry standards and, in particular, safety issues of the nature in the case.
>
> \*\*\*
>
> As part of his investigation, Mr. Jaques reviewed the deposition of Plaintiff George Farley; reviewed photographs of the area where the accident occurred on board the Mariner [sic]; reviewed all the documentation provided by Oceania during discovery; and, the provisions of the SOLAS (Safety of Life on Seas) regulations.[7]

Plaintiff's Response to Defendant Oceania Cruises, Inc.'s Motion to Strike Randall W. Jaques as an Expert Witness [DE 45] (DE# 57 at 10, 3/11/15) (footnote added).

The plaintiff relies on Lancaster v. Carnival Corp., No. 14-cv-20332, Paperless Order (DE# 148, 2/22/15) in support of his argument that Mr. Jaques should not be excluded as an expert in the instant case. In Lancaster, this Court allowed Mr. Jaques to testify as a "crowd control expert." Id.[8] Of note, Mr. Jaques had worked for the defendant cruise line operator in the Lancaster case and was familiar with its embarkation/ debarkation protocols and policies and crowd management and behavior. Id. This Court found that Mr. Jaques was "competent and qualified to testify as a crowd

---

[7] The Court notes that the "the provisions of the SOLAS (Safety of Life on Seas) regulations" are not listed under the materials reviewed section of Mr. Jaques expert report. See Expert Report (DE# 41 at 24, 10/14/14).

[8] Approximately five months before the ruling in Lancaster, this Court in a different maritime case excluded Mr. Jaques as a crowd control expert finding that his proffered testimony was both unreliable and not helpful. See Umana-Fowler v. NCL (Bahamas), Ltd., No. 13-cv-23491, 2014 WL 4832297, at *3 (S.D. Fla. Sept. 19, 2014), discussed infra.

11

control and crowd management expert" because:

> (1) Jaques "was trained by [the defendant] regarding its embarkation/ debarkation protocols and policies . . . and . . . crowd management and behavior; and [he] frequently put that training to use in [his] regular duties aboard Carnival cruise ships," . . . ; (2) he worked for two years as a security officer aboard Norwegian Cruise Lines ("NCL"), . . . ; (3) he worked for approximately a year and a half as a security officer aboard Holland America Line vessels, . . . ; (4) he holds a current certificate in shipboard crowd management from the Maritime Professional Training Center . . . and (5) "[t]he scope of [his] training and duties as a security officer for NCL, Disney, and Holland America" included "further training and experience regarding embarkation/debarkation protocols and policies, and crowd management and behavior, aboard vessels."

Id. (brackets in original). Nonetheless, the scope of Mr. Jaques' testimony was significantly curtailed by this Court:

> The Court also reiterates that it has deemed inadmissible Jaques' testimony intended to redefine the applicable standard of care in this case or assert that it is anything other than "reasonable care under the circumstances." . . . Likewise, the Court reiterates that it has already deemed inadmissible any testimony that [the d]efendant's normal debarkation process constitutes an "emergency" or "controlled evacuation." . . . Nevertheless, these rulings would not preclude Jaques from offering other admissible expert testimony based on his training and experience in crowd control and crowd management.

Id.

Lancaster is distinguishable from the instant case. Here, Mr. Jaques does not cite to or rely on any of the defendant's policies and procedures and appears to attempt to impose on the defendant the policies and procedures adopted by other cruise line operators. See Expert Report (DE# 41 at 28, 10/14/14).[9] In fact, most of the opinions

---

[9] In Expert Opinion 3, for instance, Mr. Jaques states that:

The cruise lines are on notice of previous accident involving passengers tripping and falling on the legs of lounge chairs. RCCL SQM or CCL SMS manual 1.11 requires the executive committee meet once a voyage. This

12

rendered by Mr. Jaques in the instant case do not appear to be tethered to any supporting materials or sources. "[A]n expert cannot rely on 'experience' without explaining in detail how the experience **and other materials consulted** support the opinion rendered." Umana-Fowler v. NCL (Bahamas), Ltd., No. 13-cv-23491, 2014 WL 4832297, at *3 (S.D. Fla. Sept. 19, 2014) (emphasis added) (quoting Frazier, 387 F.3d at 1265).

Although not addressed by either party, in Umana-Fowler, this Court excluded Mr. Jaques as an expert in a maritime case. The plaintiff in Umana-Fowler sought to introduce Mr. Jaques' testimony as a crowd control expert in a case "where one passenger bumped into another." Umana-Fowler, 2014 WL 4832297, at *3. This Court found that Mr. Jaques' opinions did not meet the reliability and helpfulness prongs of Daubert.

In analyzing the reliability prong, this Court noted that Mr. Jaques did not "conduct site inspections of the scene, take photographs, measurements, [or] collect

---

policy also requires the safety committee meet once a month. At these meetings the lounge chair safety issue is addressed.

Expert Report (DE# 41 at 27-28, 10/14/14). Mr. Jaques cites no documents to show that executive committee meetings are industry mandated or that the defendant in the instant case actually holds these meetings once a voyage, as is the practice of other cruise line operators. Mr. Jaques also fails to explain how the policies and practices contained in the manuals of other cruise ship operators are applicable to the defendant or how the knowledge gained during meetings conducted by other cruise lines can be imputed on the defendant in the instant case. The customs and practices of other cruise line operators do dictate the standard of care in this case. See e.g., Sorrels, 2013 WL 6271522, at *7 n.7 (noting that "[another cruise line operator]'s use of a 0.6 [coefficient of friction] for its newly built ships [did not] establish an advisory guideline or industry custom applicable to [the defendant]'s ships.").

data." Umana-Fowler, 2014 WL 4832297, at *2. He also did not review written discovery. Id. Instead, he reviewed two depositions, an affidavit and "some portion of [the defendant]'s corporate representative's deposition." Id. The Court also noted that Mr. Jaques did not:

> interview the crew members who responded to [the plaintiff's], he did not interview the unidentified man pushing a stroller who actually bumped into [the plaintiff], and he does not claim to have reviewed the safety policies that were in force when the accident took place. . . . Jaques is conversant in the STCW ("Standards of Training Certification and Watchkeeping for Seafarers"), but did nothing to evaluate what steps [the defendant] took to implement the STCW on Great Stirrup Cay, Bahamas. . . . He has not visited the scene in more than ten years, has not reviewed photographs of the scene, and does not know what might have changed at the scene since it was "reconstructed" some years ago. . . .
>
> Jaques used the information he reviewed – mostly deposition testimony of [the p]laintiff's family – and "conducted an analysis" of [the p]laintiff's accident, **but he does not elaborate as to how that analysis was conducted, how his experience informed that analysis, and what steps he took to verify the results of his analysis**. . . . ; Frazier, 387 F.3d at 1265. Jaques claimed that he applied "reliable principles and methods learned from over 25 years of experience to make findings within a reasonable degree of scientific certainty." . . . **This is not enough. If admissibility could be established merely by the ipse dixit of a qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong**. Frazier, 387 F.3d at 1261. The Eleventh Circuit specifically admonishes courts not to conflate the two. Id. at 1260.

Id. at 2-3 (emphasis added).

The methodology employed by Mr. Jaques in the instant case suffers from the same infirmities identified by this Court in Umana-Fowler. Here, Mr. Jaques failed to inspect the vessel where the accident took place or interview any crew members. He does not cite to any publications or experiments to support his opinions with respect to lounge chair safety. Mr. Jaques does not provide a detailed explanation of how his

experience supports his opinions or what materials he consulted (other than the policies and procedures of competitor cruise line operators)[10] to reach his conclusions.

The advisory committee notes for Rule 702 state that:

> If the witness is relying solely or primarily on experience, then **the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts**. The trial court's gatekeeping function requires more than simply "taking the expert's word for it."

Sorrels, 2013 WL 6271522, at *6 (quoting Fed. R. Evid. 702 advisory committee notes (2000 amends.) (emphasis added)). Mr. Jaques has not done so here.

For these reasons, the undersigned concludes that Mr. Jaques' opinions do not satisfy the reliability prong of Daubert.

## C.   Helpfulness

The third requirement for admissibility is that the expert testimony must assist the trier of fact. "[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person . . . . Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63.

According to the defendant, Mr. "Jaques' opinions add nothing to the [p]laintiff's case beyond the understanding of the average layperson as they are not based on any recognized and testable methodology." Defendant Oceania Cruises, Inc.'s Motion to Strike Randall W. Jaques as an Expert Witness (DE# 45 at 6, 1/20/15). The plaintiff

---

[10] See Expert Report (DE# 41 at 28, 10/14/14), discussed supra.

counters that:

> Randall Jaques' testimony will . . . assist the trier of fact by elucidating the applicable standard of care in the cruise ship industry. . . . Randall Jaques will not tell the jury what conclusion to reach but rather, merely assist the jury to determine intelligently and to the best possible degree what duty is owed to the [p]laintiff and why the [d]efendant violated that duty at the time of the accident.

Plaintiff's Response to Defendant Oceania Cruises, Inc.'s Motion to Strike Randall W. Jaques as an Expert Witness [DE 45] (DE# 57 at 4, 3/11/15). He further states that Mr. Jaques' "testimony will assist the trier of fact in determining whether the defendant breached the applicable standard of care because the average lay person does not know how cruise ships are organized from a safety standpoint and what training and supervision should be expected of crew members." Id. at 13.

Having determined that Mr. Jaques' methodology is not reliable, the Court agrees with the defendant that his opinions will not assist the trier of fact. Additionally, the undersigned notes that some of the opinions Mr. Jaques seeks to render are inadmissible because they invade the province of the jury. See, e.g., Expert Report (DE# 41 at 27, 10/14/14) ("[the defendant] was careless and negligent by not maintaining a clear deck walking space, hazard free . . . ."); id. ("[the defendant] is at fault for failing to properly train deck attendants, security personnel and deck department personnel in deck cleaning and hazard observation responsibility."); id. at 28 ("[the plaintiff] did not act careless or negligent."). "An expert witness may testify as to his opinion on an ultimate issue of fact, but he 'may not testify as to his opinion regarding ultimate legal conclusions.'" Umana-Fowler, 2014 WL 4832297, at *2 (quoting United States v. Delatorre, 308 F. App'x 380, 383 (11th Cir. 2009)).

Mr. Jaques is STRICKEN as an expert for the reasons stated herein.

## CONCLUSION

Based on the foregoing, it is

ORDERED AND ADJUDGED that the Defendant Oceania Cruises, Inc.'s Motion to Strike Randall W. Jaques as an Expert Witness (DE# 45, 1/20/15) is **GRANTED**.

DONE AND ORDERED in Chambers at Miami, Florida this 12 day of March, 2015.

JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies to:
All counsel of record